422 S.E.2d 822

**STATE of West Virginia, Board of Vocational Education, Division of Vocational Rehabilitations, CNA Insurance Companies, and Continental Casualty Company, Plaintiffs Below, Appellants,**

v.

**Thomas JANICKI, M.D., and P.I.E. Mutual Insurance Company, Defendants Below, Appellees.**

**No. 20156.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 28, 1992.

Decided July 10, 1992.

Sprague W. Hazard, Steptoe & Johnson, Charleston, Richard A. Simpson, Charles I. Hadden, Ross, Dixon & Masback, Washington, D.C., for appellants.

Matthew P. Moriarty, Richard W. Stuhr, Jacobson, Maynard, Tuschman & Kalur, Charleston, for appellees.

PER CURIAM:

This case involves a dispute between two insurance companies, appellant Continental Casualty Company ("Continental") and ap-pellee P.I.E. Mutual Insurance Company ("P.I.E."), regarding which carrier is required to provide liability coverage for a malpractice action against their mutual insured, appellee Thomas Janicki, M.D. The Circuit Court of Kanawha County ruled that Continental was the liable carrier and we affirm that ruling.

As a preface to the issue of coverage, it is helpful to review the following factual summary of the underlying medical malpractice suit. On July 12, 1987, Michelle Richmond came to the West Virginia Rehabilitation Center ("Center") for evaluation. Ms. Richmond was twenty-one years old and had a history of adult onset asthma. During the next three weeks, Ms. Richmond received maintenance therapy and allergy shots for her asthmatic condition from Dr. A. Rafael Gomez and Dr. Janicki, both of whom were staff members of the Center's medical clinic. Ms. Richmond's last examination at the Center occurred on the afternoon of August 3, 1987, when she was seen by Dr. Janicki. On August 4, 1987, Ms. Richmond suffered an acute asthma attack, went into cardiorespiratory arrest, and died.

On November 18, 1988, the executrix of Ms. Richmond's estate filed a wrongful death action against the State of West Virginia, Board of Vocational Rehabilitation (the "State"), and Doctors Gomez and Janicki predicated on allegations of negligent care and treatment of Ms. Richmond.

As a full-time state employee for the Center, Dr. Janicki is covered by an insurance policy issued to the State by Continental. The Continental policy provides coverage for Dr. Janicki for liability arising from acts occurring "within the scope of his duties" as a state employee. In addition to his employment with the Center, Dr. Janicki also has a part-time private medical practice. To provide coverage for his private medical practice, Dr. Janicki personally obtained a separate policy from P.I.E. While the parties have never disputed that the alleged acts of negligence occurred during the course and scope of Dr. Janicki's employment with the State, Continental denied coverage to Dr. Janicki.

The State and Continental filed a declaratory judgment action in the Kanawha County Circuit Court on April 18, 1989, to determine which carrier owed coverage to Dr. Janicki. Continental's position is essentially that the P.I.E. policy obtained by Dr. Janicki is a primary insurance policy and further that Exclusion C of the Continental policy precludes coverage. Exclusion C provides that: "INSURANCE DOES NOT APPLY: TO LIABILITY OF AN INSURED, IF AN INDIVIDUAL, FOR HIS PERSONAL ACTS OR OMISSIONS OF A PROFESSIONAL NATURE WHICH IS INSURED ON A PRIMARY BASIS BY ANOTHER VALID POLICY OR POLICIES." Because the wrongful death complaint contained averments that Dr. Janicki personally acted negligently, Continental maintains that the "personal acts" language of Exclusion C permits it to deny coverage. Continental further relies on Endorsement No. 5, commonly referred to as the "other insurance" endorsement, which provides that:

IF AN INSURED HAS OTHER PRIMARY INSURANCE FOR THE HAZARDS COVERED BY THIS POLICY, THIS POLICY DOES NOT APPLY TO LOSSES OCCURRING BEFORE THE EXPIRATION OR TERMINATION DATE OF THE OTHER INSURANCE EXCEPT TO THE EXTENT THAT THE AMOUNT OF LOSS EXCEEDS THE LIMIT OF LIABILITY OF THE INSURANCE, BUT THEN ONLY FOR AN AMOUNT NOT EXCEEDING THE DIFFERENCE BETWEEN ANY HIGHER APPLICABLE LIMIT OF LIABILITY STATED IN THE SCHEDULE OF THIS POLICY AND THE LIMIT OF LIABILITY OF THE OTHER INSURANCE.

Based on the inclusion of this "other insurance" clause in the Continental policy, Continental argues that the P.I.E. policy was the primary insurance policy and that Continental is only obligated to provide excess coverage.

P.I.E. argues that its policy cannot be construed as the primary policy based on its position that the two insurance policies do not insure the same risk. P.I.E. contends additionally that Exclusion C is ambiguous with reference to the phrase "personal acts or omissions of a professional nature." Arguing that such language must be interpreted to refer to those acts or omissions which fall outside the scope of state employment, P.I.E. interprets this exclusionary language to provide that the Continental policy only excludes the doctor's private practice from coverage.

In ruling in favor of P.I.E., the circuit court concluded that Exclusion C of the Continental policy "is ambiguous and susceptible to at least two interpretations." The court found that the exclusion "excludes only claims arising from Dr. Janicki's private practice, and not claims arising as a result of any acts or omissions that fall within the course and scope of his employment with the State of West Virginia." The court further found that the intent of the Continental policy "is to provide liability coverage to Dr. Janicki for any acts or omissions arising as a result of his employment with the State of West Virginia." The lower court did not address the effect of Endorsement No. 5 to the Continental policy.

The initial question facing this Court is whether both policies insure the same risk. PIE argues that the risks insured differ while Continental argues they are identical. In support of its position, Continental points out that both policies provide: "The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of ... injury ... arising out of the rendering of or failure to render ... professional services." Claiming that this similarity in policy language makes the risks insured by both policies the same, Continental argues that the circuit court was required to examine the "other insurance" clauses of the two policies to resolve which carrier is responsible.

■ The unmistakable and valid objective of "other insurance" clauses is to limit or avoid a carrier's liability when risk coverage is identical. But as one court has recognized: *"[I]t is first necessary to show that both policies cover the same risk....*

Then the 'other insurance' clauses of each policy come into play and the game of policy semantics begins." *National Union Fire Ins. Co. v. St. Paul Fire and Marine Ins. Co.*, 447 F.2d 75, 77 (9th Cir.1971) (emphasis supplied). The United States District Court for the Southern District of West Virginia explained in *St. Louis Fire & Marine Insurance Co. v. Aetna Insurance Co.*, 283 F.Supp. 40 (S.D.W.Va.1968) that:

> excess and other insurance clauses are applicable only where there is overlapping or double insurance and this occurs only where two or more policies insure the same party upon the same subject matter and assume the same risks. 8 Appleman, Insurance Law and Practice, Section 4911 (1962).

*Id.* at 46 (emphasis supplied).

■ By applying well-established principles of insurance law, we conclude that the PIE and Continental policies do not insure the same risk. The first of these principles concerns ambiguity. As this Court has previously ruled, "[w]henever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." Syl. Pt. 1, *Prete v. Merchants Property Ins. Co.*, 159 W.Va. 508, 223 S.E.2d 441 (1976). After examining the language found in Exclusion C of the Continental policy, we concur with the circuit court's conclusion that the exclusionary phrase "personal acts or omissions of a professional nature which is insured on a primary basis by another valid policy or policies" is ambiguous because it is susceptible to at least two interpretations. To illustrate, the language at issue could be read to exclude (1) personal acts and (2) professional negligence only if those risks are covered on a primary basis by another policy. Under this reading, the Continental policy would provide coverage for personal acts when no other coverage for such acts had been secured. A second plausible interpretation is that found by the trial court—that the exclusionary language refers to claims arising from Dr. Janicki's private practice. Finally, Exclusion C could be interpreted to exclude all personal acts and only those acts of professional negligence which are covered on a primary basis by another policy.

■ The existence of an ambiguity in the Continental policy requires the application of another insurance law tenet. "It is well[-]settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syl. Pt. 4, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (W.Va.1987). Since the coverage issue at hand deals with two insurers rather than an insurer and an insured, it is necessary to invoke yet another principle—the doctrine of reasonable expectations—to gain understanding of why the Continental policy should be construed in favor of its insured, Dr. Janicki.

■ The doctrine of reasonable expectations, as we explained in *McMahon & Sons*, "is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." 177 W.Va. at 736, 356 S.E.2d at 490, Syl. Pt. 8, in part. The following paragraphs from Dr. Janicki's affidavit articulate his expectations with regard to the Continental and PIE policies:

> 4. It was my understanding in July and August, 1987, that I was insured for professional liability by the State of West Virginia for any professional activity related to my work for the State of West Virginia at the Rehabilitation Center.

> 5. It was also my understanding in July and August of 1987, that I was required to carry separate professional liability insurance for my part-time, private practice. It was with that understanding that I had personally purchased professional liability insurance for a number of years with various companies. In 1987 I had coverage for my private practice

with the PIE Mutual Insurance Company.

6. It always has been, and still remains, my expectation that any legal action arising out of my medical work for the State of West Virginia is covered by the State's insurance carrier. On the other hand, it always has been, and still remains, my expectation that any legal activity arising out of my private medical practice will be covered by my private insurance carrier.

Application of the reasonable expectations doctrine requires this Court to construe the insurance contract at issue just as a "a reasonable person standing in the shoes of the insured would...." *Soliva v. Shand, Morahan & Co., Inc.,* 176 W.Va. 430, 433, 345 S.E.2d 33, 35–36 (1986). Dr. Janicki expected that the Continental policy would provide coverage for "any legal action arising out of ... [his] medical work for the State." The State confirmed Dr. Janicki's expectations when it issued letter 87–47 from the Director of the Division of Vocational Rehabilitation on June 1, 1987, to State employees. Included in that letter, which was issued just over two months before Ms. Richmond's death, is the following language:

2. *Insurance Liability Coverage for Agency Employees.* According to the State Board of Risk and Insurance Management and provisions of the West Virginia Code, *state government employees are covered by liability insurance as long as they are acting within the course or scope of employment or official responsibility.* (emphasis supplied)

Continental argues that the director's letter merely "discusses the scope of the coverage that the Continental policy ... provide[s] for State employees' acts ..." and does not resolve the issue of whether the Continental policy is excess with respect to the PIE policy.

The unequivocal objective of the State's procurement of the Continental policy was to obtain insurance for the acts of its employees which occurred "within the course or scope of employment or official responsibility." The PIE policy carries no similar limitation on its coverage. This is because, unlike the Continental policy, the PIE policy does not assume the risk of insuring Dr. Janicki as a state employee. Under both the facts and policies at issue, we determine that a reasonable person can make but one conclusion—that the risks covered by the two policies are not identical.

Continental places much weight on the fact that the PIE policy does not specifically include the acts of Dr. Janicki as a state employee within its express exclusions. While specific exclusionary language to this effect would certainly have eliminated the need for this Court to resolve the issue at hand, nonetheless its absence is not fatal with respect to this case. As we emphasized in *Soliva,* "[a] policy should never be interpreted so as to create an absurd result...." 176 W.Va. at 432, 345 S.E.2d at 35. Were we to find PIE responsible for alleged acts that the parties do not dispute were committed within the course and scope of Dr. Janicki's state employment, we would certainly be "creat[ing] an absurd result." *Id.*

The simple truth of the matter is that Dr. Janicki was advised and understood, as evidenced by his acts, his affidavit, and Director's Letter 87–47, that he had insurance coverage for alleged acts of negligence which occurred during the course and scope of his employment at the Center. Dr. Janicki further understood that he needed a separate policy to cover any alleged acts of negligence pertaining to his private practice. To insure his part-time private practice, as he avers in his affidavit, Dr. Janicki personally obtained various policies over the years. We see no reason to take issue with Dr. Janicki's averments regarding his objective in obtaining the PIE policy, the policy in effect during the time period of Ms. Richmond's treatment and death. We concur with PIE's statement that "[i]t would be absurd to assert that Dr. Janicki intended to pay any money for insurance to cover a practice already insured." To this point, Continental responds that excess coverage is quite common and certainly not absurd. Under different facts, we might find Continental's position more plausible. For example, if Dr. Janicki did not have a part-time practice and nonetheless purchased additional

insurance from PIE, we might find that the additional coverage was indeed intended as excess coverage. Here, however, the record clearly indicates the reason for Dr. Janicki's purchase of the separate PIE policy and it was not to provide excess coverage for his acts committed as a State employee. The PIE policy was obtained to provide coverage for his private practice.

■ Both the securement of the PIE policy by Dr. Janicki for his private practice and the director's letter demonstrate that Dr. Janicki, as an intended third-party beneficiary of the Continental policy, and the State, as one of the contracting parties, both placed the same interpretation on the Continental policy. As we have previously determined, "[w]hen a contract is ambiguous and of doubtful and uncertain meaning, and the parties have by their contemporaneous or subsequent conduct placed a construction upon it which is reasonable, that construction will be adopted by the court." Syl. Pt. 1, *Fredeking v. Grimmett*, 140 W.Va. 745, 86 S.E.2d 554 (1955); *accord West Virginia Pub. Employees Ins. Bd. v. Blue Cross Hosp. Serv., Inc.*, 174 W.Va. 605, 607, 328 S.E.2d 356, 358 (1985). To hold Continental liable for Dr. Janicki's defense costs,[1] is certainly reasonable when as here there is no dispute that the alleged acts occurred during the course and scope of Dr. Janicki's state employment and further that the Continental policy was obtained by the State for this very purpose. In so ruling, we certainly avoid the absurd result that would occur if we determined Continental did not owe coverage to Dr. Janicki. The taxpayers of the State would have paid premiums to Continental for a specified risk and yet Continental would not be liable for any claims arising from that insured risk.

For the reasons set forth in this opinion, the ruling of the Circuit Court of Kanawha County is hereby affirmed.

Affirmed.

---

**1.** Because Dr. Janicki was found to have no liability with regard to Ms. Richmond's death, the only sums at issue are those costs incurred in connection with his defense.