500 S.E.2d 870

Kevin R. PILLING and Janet E. Pilling, Appellees,

v.

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY and Ralph Eckenrode, Defendants Below,

Nationwide Mutual Fire Insurance Company, Appellant.

No. 23949.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 15, 1997.

Decided Dec. 17, 1997.

758

Barry Hill, Gompers, McCarthy, Hill & McClure, Weirton, and M. Kent Carper, Hill, Peterson, Carper, Bee & Deitzler, Charleston, for Appellees.

Michael D. Lorensen, Bowles Rice McDavid Graff & Love, Martinsburg, for Appellant Nationwide.

PER CURIAM:[1]

Nationwide Mutual Insurance Company (hereinafter "Appellant" or "Nationwide") appeals a declaratory judgment in the lower court finding coverage under the homeowner policy of Nationwide's insured, Mr. and Mrs. Kevin R. Pilling (hereinafter "Plaintiffs" or "Appellees") for damages caused by the rupture of water pipes in the Appellees' home. Nationwide contends that the lower court erred in finding coverage under the relevant policy language. We conclude that the lower court erred in finding coverage under the Appellees' homeowner's policy for damages to their home caused by ruptured water pipes. We therefore reverse the decision of the lower court.

## I.

### FACTUAL BACKGROUND

In January 1994, the Appellees returned home and discovered that the water pipes in the home had ruptured, causing extensive damage to the property. The Appellees filed a claim under their homeowners policy with Nationwide, and Nationwide denied coverage based upon the following policy language: "We cover direct physical loss to property ... caused by: 3. Explosion. This peril does not include shock waves caused by aircraft (sonic boom), electrical arcing, water hammer and rupture of water pipes."

The Appellee filed a declaratory judgement action, seeking a ruling by the lower court, and contending that the "rupture of water pipes" language was modified by "shock waves caused by." The Appellee further maintained that the policy language did not exclude rupture of water pipes from coverage. The lower court found the language ambiguous, construed the ambiguous language in favor of the insured, and held that the policy language did not exclude rupture of water pipes from coverage. Nationwide

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992) ("Per Curiam opinions ... are used to decide only the specific case before the Court; everything in a *per curiam* opinion beyond the syllabus point is merely *obiter dicta*.... Other courts, such as many of the United States Circuit Court of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published per curiam opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a per curiam opinion.")

now appeals that ruling, maintaining that the language eliminates four specific perils from coverage: shock waves caused by aircraft; electrical arcing; water hammer damage; and rupture of pipes. Nationwide argues that it would stretch the imagination to believe that the language could refer to shock waves caused by electrical arcing, for instance. The "caused by" language, in Nationwide's estimation, only refers back to "shock waves," and does not modify the electrical arcing, water hammer, or rupture of pipes. Nationwide maintains that "rupture of pipes" stands on its own, without modification, and specifically eliminates pipe rupture from coverage.

## II.

### POLICY INTERPRETATION

In the syllabus of *Keffer v. Prudential Insurance Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970), this Court explained: "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." We also explained in syllabus point one of *Soliva v. Shand, Morahan & Co.*, 176 W.Va. 430, 345 S.E.2d 33 (1986), that "[l]anguage in an insurance policy should be given its plain, ordinary meaning."

## III.

### STANDARD OF REVIEW

■ The determination of whether ambiguity exists is a legal question which is reviewed de novo at the appellate level. In *Payne v. Weston*, 195 W.Va. 502, 466 S.E.2d 161 (1995), we discussed the standard of review, acknowledging that "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination which, like the court's summary judgment, is reviewed de novo on appeal." *Id.* at 506–507, 466 S.E.2d at 165–66.

2. Regarding construction of insurance contracts, syllabus point two of *Janicki* instructs: " 'It is well[-]settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured.' Syl. Pt. 4, *National Mut.*

## IV.

### DEFINITION OF "AMBIGUITY"

■ In syllabus point one of *State v. Janicki* 188 W.Va. 100, 422 S.E.2d 822 (1992), we explained that " '[w]henever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous.' Syl. Pt. 1, *Prete v. Merchants Property Ins. Co.*, 159 W.Va. 508, 223 S.E.2d 441 (1976)."

■ In syllabus point one of *Berkeley County Public Service District v. Vitro Corp. of America*, 152 W.Va. 252, 162 S.E.2d 189 (1968), this Court cautioned that "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." *Id.* at 267, 162 S.E.2d at 200. *See also Eggleston v. West Virginia Dept. of Highways*, 189 W.Va. 230, 429 S.E.2d 636 (1993). This Court also cautioned in *Payne*, however, that "a court should read policy provisions to avoid ambiguities and not torture the language to create them." 195 W.Va. at 507, 466 S.E.2d at 166. Construction of the language is undertaken only when it is determined that an actual ambiguity exists.[2] "Only if the court makes the determination that the contract cannot be given a certain and definite legal meaning, and is therefore ambiguous, can a question of fact be submitted to the jury as to the meaning of the contract. It is only when the document has been found to be ambiguous that the determination of intent through extrinsic evidence become a question of fact." *Id.*

■ Although the contract at issue in the present case is poorly drafted, its meaning can still be discerned. There is disagreement between the parties regarding the proper interpretation of the language, but as

*Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987)." *Janicki* also addresses the doctrine of reasonable expectations, applicable only where the language in an insurance policy is ambiguous.

we emphasized in *Berkeley County Public Service District*, such disagreement does not render the language ambiguous. 152 W.Va. at 267, 162 S.E.2d at 200. In our de novo review of the determination of whether ambiguity exists, we conclude that the language is not ambiguous. The language declares that Nationwide covers direct physical loss to property caused by explosion. "Explosion," however, does not include four specified things: (1) shock waves caused by aircraft; (2) electrical arcing; (3) water hammer; or (4) rupture of water pipes. We conclude that the lower court erred in determining that the language was ambiguous and in finding that the Appellees were entitled to coverage under this policy language. We therefore reverse the decision of the lower court.

Reversed.