607 S.E.2d 415

William E. WEHNER, Jr., Administrator of the Estate of Jennifer Wehner, Nicole Fisher, Jessica Landau, Matthew Kiser, Sigma Phi Epsilon, a National Fraternal Organization and Association, a Virginia Corporation, and Sigma Phi Epsilon Building Association, Inc., a Corporation, Plaintiffs Below,

William E. WEHNER, Jr., Administrator of the Estate of Jennifer Wehner, Nicole Fisher, Jessica Landau, Plaintiffs Below, Appellants,

v.

Brett Barry WEINSTEIN, Mark Weinstein, Shirley R. Weinstein, Bossio Enterprises, Inc., d/b/a Mario's Pizza, Aetna Casualty & Surety Co., A Foreign Corporation, and the Standard Fire Insurance Company, a Foreign Corporation, Defendants Below, Appellees,

v.

American International Companies, New Hampshire Insurance Company, Essex Insurance Company, and Pennsylvania National Mutual Insurance Company, Third–Party Defendants, Appellees

William E. Wehner, Jr., Administrator of the Estate of Jennifer Wehner, Nicole Fisher, Jessica Landau, Matthew Kiser, Sigma Phi Epsilon, a National Fraternal Organization and Association, a Virginia Corporation, and Sigma Phi Epsilon Building Association, Inc., a Corporation, Plaintiffs Below, Appellees,

v.

Brett Barry Weinstein, Mark Weinstein, Shirley R. Weinstein, Bossio Enterprises, Inc., d/b/a Mario's Pizza, Aetna Casualty & Surety Co., a Foreign Corporation, and the Standard Fire Insurance Company, a Foreign Corporation, Defendants Below, Appellees,

v.

American International Companies, New Hampshire Insurance Company, Essex Insurance Company, and Pennsylvania National Mutual Insurance Company, Third–Party Defendants, Appellants

William E. Wehner, Jr., Administrator of the Estate of Jennifer Wehner, Nicole Fisher, Jessica Landau, Matthew Kiser, Sigma Phi Epsilon, a National Fraternal Organization and Association, a Virginia Corporation, and Sigma Phi Epsilon Building Association, Inc., a Corporation, Plaintiffs Below, Appellees,

v.

Brett Barry Weinstein, Mark Weinstein, Shirley R. Weinstein, Bossio Enterprises, Inc., d/b/a Mario's Pizza, Aetna Casualty & Surety Co., a Foreign Corporation, and the Standard Fire Insurance Company, a Foreign Corporation, Defendants Below, Appellees,

v.

American International Companies, New Hampshire Insurance Company, Essex Insurance Company, and Pennsylvania National Mutual Insurance Company, Third–Party Defendants,

Pennsylvania National Mutual Insurance Company, Third–Party Defendant, Appellant.

No. 31736, 31737, 31738.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 9, 2004.

Filed Dec. 1, 2004.

Marvin W. Masters, Masters & Taylor, L.C., Charleston, for Wehner, Fisher and Landau.

Ancil G. Ramey, Laurie C. Barbe, Scott E. Johnson, Steptoe & Johnson, PLLC, Charleston, for New Hampshire Insurance Company.

Richard W. Gallagher, Jeffrey A. Kimble, Robinson & McElwee, PLLC, Clarksburg, for Pennsylvania National Mutual Insurance Company.

Avrum Levicoff, Brown & Levicoff, P.C., Pittsburgh, Pennsylvania, for Bossio Enterprises and Travelers Casualty & Surety Company, f/k/a Aetna Casualty & Surety Company and The Standard Fire Insurance Company.

PER CURIAM:

This is a consolidated appeal from a Circuit Court of Monongalia County order dated April 8, 2003, granting summary judgment to

New Hampshire Insurance Company (hereinafter "New Hampshire"),[1] holding that no liability coverage existed for Mr. Brett Weinstein and Mr. Matthew Kiser under Sigma Phi Epsilon fraternity liability insurance policies and denying a motion for leave to amend the complaint to include a bad faith claim against New Hampshire. Appellants, including Nicole Fisher; Jessica Landau; William E. Wehner, Jr., as administrator of the estate of Jennifer Wehner; Travelers Casualty & Surety Company, as insurance carrier for Bossio Enterprises; and Pennsylvania National Mutual Insurance Company, as insurance carrier for Mr. Kiser, contend that the lower court erred in granting summary judgment to New Hampshire and in holding that policies issued to the national fraternity of Sigma Phi Epsilon by New Hampshire did not provide coverage for Mr. Weinstein and Mr. Kiser. Appellants Wehner, Fisher, and Landau also assert that the lower court erred by denying their motion to amend the complaint to include a bad faith action against New Hampshire.[2] Upon thorough review of the record, briefs, arguments of counsel, and applicable precedent, this Court reverses the decision of the lower court and remands for further proceedings consistent with this opinion.

## I. Factual and Procedural History

### A. The 1989 Accident

On April 20, 1989, West Virginia University student and Sigma Phi Epsilon fraternity member Brett Weinstein realized that his automobile was blocked in the fraternity house property by a pizza delivery vehicle owned by Bossio Enterprises, Inc., DBA Mario's Pizza in Morgantown, West Virginia. When Mr. Weinstein was unable to locate the driver[3] of the pizza delivery vehicle, he requested assistance from fraternity pledge Matthew Kiser to move the car.[4] Mr. Weinstein released the hand brake of the standard transmission vehicle and placed the gear shift in neutral. The vehicle rolled out of control down a steep driveway and onto High Street. It struck and killed Ms. Jennifer Wehner and also struck and injured Appellants Nicole Fisher and Jessica Landau. Appellant William Wehner is the administrator of the estate of Jennifer Wehner.

### B. Civil Actions

Actions for damages were brought in the Circuit Court of Monongalia County by the personal representative of the Wehner estate, Ms. Fisher, and Ms. Landau against Mr. Weinstein; Mr. Kiser; Bossio Enterprises, DBA Mario's Pizza; Sigma Phi Epsilon, a National Fraternal Organization and Association; and Sigma Phi Epsilon Building Association, Inc., a Corporation.[5] In the subsequent September 1992 trial, the jury returned verdicts against all the defendants, awarding $1,978,623 to the Wehner estate; $132,090.25 to Ms. Fisher; and $87,154.85 to Ms. Landau. The jury assessed fault as follows: Mr. Weinstein, 75 percent; Bossio Enterprises, Inc., 10 percent; Mr. Kiser, 5 percent; Sigma Phi Epsilon National Fraternity, 5 percent; and Sigma Phi Epsilon Building Association, 5 percent.[6]

---

1. According to the record, it appears that American International Adjustment Company was New Hampshire's claims handling affiliate and was also joined as a third party defendant. For purposes of this opinion, however, we shall refer to the "New Hampshire" policies when discussing the policies in question.

2. Appellants Wehner, Fisher, and Landau seek to amend their complaint, allowing it to relate back to the date it was filed since the delay in granting leave to file and serve the amended complaint was not the fault of the Appellants.

3. The driver, Mr. David Turner, was delivering an order to an individual at the fraternity house. Based upon the jury's finding that Mr. Turner was negligent in the manner in which he parked the pizza delivery vehicle, the jury found that Mario's Pizza, as his employer, was ten percent at fault for the accident which ultimately occurred.

4. The fraternity system's hierarchy of power apparently requires a pledge to assist a fraternity member when requested.

5. The West Virginia University Board of Trustees, a corporation, had originally been included in the complaint but was ultimately dismissed on summary judgment prior to trial, according to the lower court order from which the Appellants appeal.

6. The Sigma Phi Epsilon Building Association, Inc., owns the real estate on which the fraternity house is located. The Association was sued based upon the allegation that the premises were dangerous due to the location on a steep hill, that

### C. Appeal to West Virginia Supreme Court of Appeals in 1994

On appeal to this Court, the jury verdict was affirmed as it applied to Mr. Weinstein, Mr. Kiser, and Bossio Enterprises, but this Court reversed the judgment against the fraternity and the fraternity building association. *Wehner v. Weinstein,* 191 W.Va. 149, 444 S.E.2d 27 (1994). This Court reasoned that the actions of Mr. Weinstein and Mr. Kiser were independent of both the fraternity and the fraternity building association and that their actions could not be imputed to the fraternity.

Based upon the reversal by this Court, the jury's allocation of fault was redistributed among the remaining defendants, as follows: Mr. Weinstein, 83.33 percent; Bossio Enterprises, 11.11 percent; and Mr. Kiser, 5.55 percent. Mr. Weinstein was able to satisfy his pro rata share of liability, in part, through liability insurance coverage of $50,000 under a motor vehicle insurance policy covering his vehicle, as well as a homeowner's insurance policy of $300,000 issued to Mr. Weinstein's parents as named insureds. Mr. Weinstein was not, however, able to satisfy his entire share of liability. Consequently, the remaining amount of the judgments, under principles of joint and several liability, were paid by liability insurers for Bossio Enterprises and Mr. Kiser. Aetna Casualty and Surety Company, as predecessor to Travelers, was the insurance carrier for Bossio Enterprises, and Pennsylvania was the carrier for Mr. Kiser.[7]

### D. Declaratory Judgment Action to Determine Coverage

During a subsequent declaratory judgment action instituted by the fraternity building association and the plaintiffs, previously undisclosed information was discovered indicating that the national fraternity had purchased liability insurance from New Hampshire, through a program designed for national fraternal organizations. New Hampshire had underwritten a program offering insurance for a group of national fra-

ternal organizations. An originator of the program was Mr. Ron Krebs of Insurance Coverages Limited, an insurance agency located in St. Louis, Missouri. According to evidence presented below, coverages were placed by Mr. Krebs through an insurance agency in Louisville, Kentucky, at which Mr. James Beckman was employed. Mr. Krebs testified that, by express design, policies issued under the fraternity insurance program covered not only the national fraternity as a named insured but also included all fraternity members and pledges as *named insureds,* whether or not they were engaged in fraternity activities. Thus, according to Mr. Krebs, the express purpose of the insurance was to afford members and pledges all benefits and protections of the policies. The premiums paid for the coverage were based directly upon the number of active members in the covered fraternity. Mr. Krebs explained in his deposition that membership size was utilized as the premium basis because the risk exposure was directly related to the fraternity members.

The purchases from New Hampshire by the Sigma Phi Epsilon national fraternity included a primary general liability policy with a limit of $1 million and an umbrella excess policy with an additional limit of $2 million. While New Hampshire retained counsel to defend the fraternity itself during trial, New Hampshire had not revealed that coverage might also exist directly for Mr. Weinstein and Mr. Kiser under policies insuring members of the fraternity as named insureds. The declarations of both the primary and excess policies specifically included a typewritten "Named Insured" endorsement listing, specifying "All Sigma Phi Epsilon Fraternity, Inc., Members and Pledges" as "Named Insureds."

In the primary general liability policy only, an additional endorsement was included, identified as "Additional Insured—Club Members." This portion of the primary policy provided: "It is agreed that the 'Persons Insured' provision is amended to include as

---

it failed to provide proper traffic warnings, and that it failed to supervise the actions of Mr. Weinstein and Mr. Kiser.

7. The aggregate judgments exceeded $2.2 million, totaling over $2.5 million when interest was accrued.

an insured any member of the named insured but only with respect to his liability for activities of the named insured or activities performed by such member on behalf of the named insured." This "Additional Insured" provision was not included in the $2 million excess policy.

The Appellants contend that the primary general liability policy issued by New Hampshire had included the "Additional Insured—Club Members" endorsement by mistake. According to the Appellants, this alleged error was recognized by Mr. Beckman and detailed in a February 9, 1989, letter to Mr. Dave Hyde, an underwriting manager with New Hampshire. In that letter, Mr. Beckman explained that since members and pledges were named insureds, adding them as additional insureds was unnecessary. On February 21, 1989, approximately two months prior to the accident at issue in this case, Mr. Hyde responded, "I agree—effective immediately let's delete on current National Fraternities." Consequently, the "Additional Insured—Club Members" endorsement was deleted during the next annual renewal of the policies. It did exist, however, on the applicable primary general liability policy in question herein.

Based upon the existence of the New Hampshire policies, Travelers and Pennsylvania, as insurers for Bossio Enterprises and Mr. Kiser, respectively, asserted claims against New Hampshire, alleging that New Hampshire should have afforded coverage for Mr. Weinstein's share of the liability. In addition, Mr. Kiser's insurer, Pennsylvania, asserted that New Hampshire should have afforded full coverage for Mr. Kiser's liability.[8] The personal representative of the Wehner estate, Ms. Landau, and Ms. Fisher also asserted claims against New Hampshire based upon New Hampshire's allegedly deceptive conduct in concealing the existence of $3 million in liability coverage that they contend should have been available to satisfy the judgments.

In August 1997, the issue of New Hampshire's coverage was presented to the lower court. At a status conference in May 2001, the lower court announced a ruling from the bench, concluding that although Mr. Weinstein and Mr. Kiser were named insureds, the "Additional Insured—Club Member" endorsement of the primary general liability policy essentially removed them as covered insureds while they were not engaged in fraternity activities. Finding that attempting to move a parked vehicle was not a fraternity activity, the lower court concluded that the New Hampshire primary general liability policy did not provide coverage for Mr. Weinstein or Mr. Kiser.

The lower court further found that the excess policy also failed to provide coverage, despite the absence of similar "Additional Insured—Club Members" language. The lower court reasoned that the scope of coverage should be restricted to the very limited coverage provided under the "Additional Insured—Club Members" language in the primary general liability policy. Thus, the lower court granted summary judgment in favor of New Hampshire during the May 2001 status conference. Due to the inability of the various parties to agree upon language to be contained in a written summary judgment order, a final order was not completed until April 8, 2003.

The April 8, 2003, order articulates the lower court's reasoning in granting summary judgment to New Hampshire and in denying a motion to amend the complaint to include a bad faith claim. The lower court explained that although Mr. Weinstein and Mr. Kiser are named insureds, such coverage was too expansive and should be restricted to the "Additional Insured—Club Members" language limiting liability to incidents occurring where the member or pledge was engaging in fraternity activities. The lower court found that the attempt to move the parked vehicle was not a fraternity activity and should therefore not be covered by the New

---

8. New Hampshire acknowledged no coverage or defense obligations toward Mr. Weinstein. New Hampshire did participate in satisfaction of the judgment, paying fifty percent of Mr. Kiser's share. New Hampshire also afforded Mr. Kiser a defense under reservation based upon uncertainty over whether Mr. Kiser's actions were within the scope of his responsibilities as a pledge to the fraternity.

Hampshire policy. It is from that summary judgment order that the Appellants now appeal.

## II. Standard of Review

■ Because the determination of insurance coverage in this case involves a question of law, this Court reviews this issue under a *de novo* standard of review. Syllabus point one of *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995), provides that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." The *de novo* standard is also properly employed based upon the fact that this Court is reviewing a lower court's grant of summary judgment. As this Court stated in syllabus point one of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), "A circuit court's entry of summary judgment is reviewed *de novo.*" *See American States Ins. Co. v. Tanner*, 211 W.Va. 160, 563 S.E.2d 825 (2002).

## III. Discussion

### A. Primary General Liability Policy

■ The primary general liability insurance policy provided by New Hampshire included two provisions which have caused substantial confusion in the attempt to interpret and apply both policies in question. Fraternity members and pledges are named insureds; they are also additional insureds with specific restrictions for coverage. The two provisions therefore appear inconsistent, and it has proven exceedingly difficult for the lower court and the parties to interpret the policy in a manner which provides consonance between the two provisions.

■ This Court has consistently held that " " '[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. Pt. 1, *Soliva v. Shand, Morahan & Co.*, 176 W.Va. 430, 345 S.E.2d 33 (1986).' Syllabus point 2, *Russell v. State Automobile Mutual Insurance Co.*, 188 W.Va. 81, 422 S.E.2d 803 (1992)." Syl. Pt. 2, *Tanner*, 211 W.Va. at 162, 563 S.E.2d at 827. In syllabus point three of *Tanner*, this Court also explained:

" 'Where the provisions in an insurance policy contract are clear and unambiguous

they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.' Syllabus, *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970)." Syllabus point 1, *Russell v. State Automobile Mutual Insurance Co.*, 188 W.Va. 81, 422 S.E.2d 803 (1992).

■ The problem of ambiguity in a contract of insurance has been extensively addressed by this Court, and ambiguity has been defined as follows: "Whenever the language of an insurance policy provision is reasonably susceptible of two different meaning or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." *Riffe v. Home Finders Associates, Inc.*, 205 W.Va. 216, 221, 517 S.E.2d 313, 318 (1999). Where an ambiguity exists, this Court has explained that certain rules of construction will be implemented. "First, any ambiguity in the language of an insurance policy is to be construed liberally in favor of the insured, as the policy was prepared exclusively by the insurer. This principle applies to policy language on the insurer's duty to defend the insured, as well as to policy language on the insurer's duty to pay." *Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 378, 376 S.E.2d 581, 584 (1988). In syllabus point two of *State v. Janicki*, 188 W.Va. 100, 422 S.E.2d 822 (1992), this Court stated that " '[i]t is well[-]settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured.' Syl. Pt. 4, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987)." *See also Aetna Casualty & Sur. Co. v. Pitrolo*, 176 W.Va. 190, 194, 342 S.E.2d 156, 160 (1986) ("[w]e have long recognized that since insurance policies are prepared solely by insurers, any ambiguities in the language of insurance policies must be construed liberally in favor of the insured").

As the lower court acknowledges in its summary judgment order, Mr. Weinstein and Mr. Kiser are named insureds under both the primary and excess policies issued by New Hampshire. In the primary general liability policy, we find that the existence of

the "Additional Insureds—Club Members" endorsement creates an ambiguity which must be resolved.[9] It is simply unreasonable and internally inconsistent to postulate that members and pledges are to be characterized as *both* named insureds with full coverage and additional insureds with limited coverage. In resolving the ambiguity in favor of the insured, we are compelled to find that the inclusion of members and pledges as named insureds provides a legitimate basis for coverage and that the existence of the "Additional Insureds—Club Members" endorsement should not be interpreted or applied to diminish that coverage. Representatives of the insurance company acknowledged that the inclusion of members and pledges as additional insureds was unnecessary where members and pledges had already been designated as named insureds. As acknowledged by the correspondence between Mr. Beckman and Mr. Hyde and the decision to delete the endorsement, the inclusion of the "Additional Insureds—Club Members" endorsement on the primary general liability policy was unnecessary; fraternity members and pledges were already included as named insureds. No "additional" endorsement was required.

■ Moreover, our conclusion is supported by this Court's consistent adherence to the principle that any exclusionary language in an insurance policy must be strictly construed. "We scrutinize more carefully any policy language that has the effect of excluding an insured from coverage." *Erie Ins. Property & Cas. Co. v. Stage Show Pizza,* 210 W.Va. 63, 67, 553 S.E.2d 257, 261 (2001) (quoting *Riffe,* 205 W.Va. at 222, 517 S.E.2d at 319). We have also emphasized that any exclusionary language must be presented clearly and unambiguously by the policy language. In syllabus point ten of *National Mutual Insurance Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488 (1987),

overruled on other grounds by Potesta v. U.S. Fidelity & Guar. Co., 202 W.Va. 308, 504 S.E.2d 135 (1998), this Court stated: "An insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured."

■ The lower court also pronounced rulings on what it termed the "contingent" issue of New Hampshire's argument that certain other exclusionary language would foreclose coverage. The court explained that language in the policy excluding from coverage bodily injury and property damage arising from certain uses of specified automobiles "would not apply to the facts of this case and would not bar coverage."[10] We agree and affirm the lower court in that regard. As the lower court found, the automobiles specified in the exclusionary language do not include the pizza vehicle in question, and we consequently find that any examination of exclusions to those exclusions is not of assistance in our evaluation.

■ The lower court also addressed policy language purporting to limit coverage to only businesses conducted by the named insureds on the property as the "sole owner." The lower court stated that it found:

> that the language of the policy could not possibly have been intended to be that limited in its scope. Such an interpretation would render the coverage of the policy illusory in that it would really provide no coverage at all because, as far as the court can determine from the record, there are no businesses conducted on the fraternity property by anyone.

Thus, the court refused to "construe the policy as providing coverage for active members

---

9. Travelers contends that the inclusion of members and pledges as named insureds provides coverage under the primary general liability policy and that there was no occasion for the lower court to reach the question of whether the "Additional Insureds—Club Members" endorsement was also applicable. Travelers also argues, however, that if there is any ambiguity created by the

simultaneous existence of both provisions, it must be resolved in favor of coverage.

10. By express provision, the exclusions would apply where the automobile in question was "owned or operated by or rented or loaned to any insured..." or "operated by any person in the course of his employment by any insured."

or pledges only to the extent that they conduct a business." We affirm the decision of the court in that regard and find that such language addressing the conduct of business is of no assistance in resolving the questions before this Court.

## B. Excess Umbrella Policy

▇▇▇ The "Additional Insured—Club Members" endorsement which generated confusion in the interpretation of the primary general liability policy is not present in the excess umbrella policy. We therefore find that no ambiguity exists in the excess policy and that the lower court erred in attempting to construe an unambiguous insurance document. We find that the lower court's conclusion that no coverage is provided under the excess policy is unfounded. The lower court's summary judgment order stated:

> "[T]he Court construes the coverage of the Umbrella Excess Policy as having been intended to insure members and pledges only while they are involved in fraternity-related activities.... Therefore, the Court will construe the coverage of the Umbrella Excess Policy, consistent with that intent, as applying to fraternity members or pledges when acting on behalf of the fraternity or while involved with fraternity activities."

The fallacy in that conclusion by the lower court is that no construction of the policy was necessary and was in fact improper where no ambiguity existed. "This Court has uniformly held that where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." *Keffer v. Prudential Ins. Co. of America*, 153 W.Va. 813, 815–16, 172 S.E.2d 714, 715 (1970). We consequently reverse the lower court's finding that the excess policy did not provide coverage to Mr. Weinstein and Mr. Kiser.

11. The lower court included a footnote in its summary judgment order stating that it was "of the opinion that New Hampshire's coverage would be primary over the Penn National coverage based upon a comparison of the 'other in-

## C. Bad Faith Claim

▇▇▇ We also conclude that the bad faith cause of action attempted by the Wehner estate, Ms. Fisher, and Ms. Landau may proceed. These Appellants filed a motion to amend their complaint in 1994. Rather than granting their motion and staying discovery until the joint declaratory judgment action was decided, the lower court denied the motion pending the outcome of the declaratory judgment action. The Appellants explain that a bad faith claim would be premised upon the fact that although New Hampshire specifically designated fraternity members and pledges as named insureds when it issued the policies, it later asserted that members were not entitled to coverage. The Appellants would also found their bad faith claim upon evidence indicating that New Hampshire failed to reveal or acknowledge throughout the underlying proceedings that members and pledges were specifically listed as named insureds under both applicable policies and that New Hampshire denied coverage for Mr. Weinstein during trial and defended Mr. Kiser solely on the ground that he might be afforded coverage as an additional insured if he had been acting within the scope of his duties as a pledge. The Appellants claim that the result of the alleged bad faith was that all other parties and insurance companies were deceived throughout the trial preparation and the trial.

Upon review, while we express no view regarding the ultimate outcome of a bad faith action against New Hampshire, we find that the Appellants seeking to assert a bad faith claim may amend their complaint, as requested. Such amendment shall relate back to the date the complaint was filed based upon the fact that the delay in granting leave to file and serve the amended complaint was not the fault of the Appellants.

## D. Conclusion

Based upon the foregoing analysis, this Court reverses the decision of the lower court and remands for further proceedings consistent with this opinion.[11] Specifically,

surance' clauses contained in those companies' policies at issue in this case." We express no opinion on that issue, leaving that matter to be resolved below upon remand.

we find that the "Additional Insured—Club Members" language in the primary general liability policy does not exclude Mr. Weinstein and Mr. Kiser from coverage as named insureds in the policy and that the bad faith claim should be permitted to proceed.

Reversed and Remanded.

Justice STARCHER, deeming himself disqualified, did not participate in the decision in this case.

Judge SPAULDING, sitting by temporary assignment.